

**ORDERED in the Southern District of Florida on September 23, 2022.**

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**
_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov**

In re:                                                    Case No.: 22-10140-MAM

Luis Robert Adam and Gislaine Adam,
                                                          Chapter 13
         Debtors.
_____/

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND
OVERRULING IN PART OBJECTION TO CLAIM (ECF NO. 67)**

The Court issues this Opinion today to address issues at the intersection of Florida state law and federal bankruptcy law raised by Debtors' *Amended Objection to Claim on Shortened Notice* filed as ECF No. 67 (the "Objection") and the response at ECF No. 78 (the "Response") filed by Creditor Highland House of Palm Beach Condominium

Association, Inc. (the "HOA"). The issues demonstrate the complexity of determinations within a bankruptcy case, where state law governs and defines property interests but the Bankruptcy Code determines to what extent those interests will receive a distribution from the bankruptcy estate.

## PROCEDURAL BACKGROUND

The Objection seeks disallowance of $36,558.30 of the HOA's claim (Claim No. 18, the "Claim"), because Debtors believe that this portion of the Claim lacks foundation. Debtors initially contended that the Claim's documentation did not support post-judgment special assessments and did not include copies of board minutes or recorded claims of lien. The Response addressed some of those concerns by attaching copies of board minutes relating to the Claim.

After reviewing those documents, the Court set an evidentiary hearing on May 25, 2022 (the "Evidentiary Hearing"). The parties submitted additional testimonial and documentary evidence in support of their positions, as well as supplemental post-hearing briefs at ECF Nos. 96 and 97.

At the Evidentiary Hearing, the parties narrowed the scope of their dispute to Part C of the HOA's Statement of Itemized Interest, Fees, Expenses, and Charges (ECF No. 86-1, p. 5-6.). Part C describes $31,000 in past due monthly maintenance and special assessments plus accrued interest of $5,558.30 for a total of $36,558.30 (the "Disputed Amount"). Debtors contested the validity of this portion of the Claim despite entry of a state court judgment because that judgment (as amended by the state court Order and Final Judgment Granting Plaintiff's Motion for Attorneys' Fees and Costs to be Incorporated into the Final Judgment, docketed in this Bankruptcy Case at ECF Nos. 86-2 and 86-3) did not include the Disputed Amount.

At the Evidentiary Hearing and in their post-hearing briefing, the parties focused upon whether the Disputed Amount constituted a secured claim against the Debtors' real property. Although Debtors did not directly concede the correctness of the HOA's calculations of the Disputed Amount, they did not dispute the HOA's entitlement to assess any portion of the Claim, including the Disputed Amount. Debtors also acknowledged the finality of the state court judgment described in Part A of the Claim as well as of the state court order itemized in Part B. As a

result, the only question presented to the Court for resolution was whether the Disputed Amount constitutes a secured claim against the Debtors' real property.

## ANALYSIS

To begin its analysis, the Court reviewed Chapter 718 of the Florida Statutes (the "Condominium Statutes") and the declaration of condominium found as Debtor's Exhibit 4 (the "Declaration") (ECF No. 87-4). Section 718.102 of the Condominium Statutes provides that "[e]very condominium created and existing in [the state of Florida] shall be subject to the provisions of [the] chapter". The breadth of that language means that Chapter 718 applies to Debtors' residence, a condominium within the state of Florida. If there were any remaining doubt as to the applicability of the Condominium Statutes, ample case law supports the premise that within Florida, condominiums are creatures of statute and are therefore governed by Florida Statutes. *Tranquil Harbour Development, LLC v. BBT, LLC*, 79 So.3d 84, 86 (Fla. 1st DCA 2012).

A. Florida Statutes Chapter 718

Having concluded that Florida Statutes Chapter 718 applies, the

Court next considered the form of and the timing of recordation of the Declaration, along with the history of Florida Statute § 718.116(5)(a), and any other potentially relevant historical provisions of Chapter 718.[1] That analysis required the Court to delve deeply into the various versions of Chapter 718 as of and after the recording of the Declaration on February 9, 1987.

1. Current Version: Florida Statutes § 718.116 (2022)

The version of § 718.116(5)(a) presently in effect provides that a homeowners' association has a lien on each condominium parcel to secure the payment of assessments.[2] That lien is effective from and relates back to the recording of the original declaration of condominium, except as to first mortgages of record. For recorded first mortgages, the lien is only

---

[1] All references in this Opinion to "§ 718.[#]" are to Chapter 718, Florida Statutes. The Court also occasionally refers to Chapter 718 as the "Condominium Statutes".

[2] Specifically, § 718.116(5)(a) states:

> The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located. Nothing in this subsection shall be construed to bestow upon any lien, mortgage, or certified judgment of record on April 1, 1992, including the lien for unpaid assessments created herein, a priority which, by law, the lien, mortgage, or judgment did not have before that date.

5

effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located.

In its current iteration, Chapter 718 states that homeowner associations have statutory liens to secure unpaid assessments. Looking at the 2022 version of the Condominium Statutes, the combination of § 718.102 and § 718.116 seems to provide the HOA with a secured claim by virtue of a statutory lien. But, the Court's analysis did not end there, because the language of the Declaration also impacts whether or not the Disputed Amount may be treated as a secured claim in this Bankruptcy Case.

### 2. The Declaration

Based upon the language of the Declaration, Debtors believe that Creditors' failure to record a Claim of Lien for the Disputed Amount prior to the Petition Date invalidates the secured status of the portion of the Claim equal to the Disputed Amount.[3]

The Declaration is dated January 30, 1987 and was recorded on February 9, 1987. Sections (i) through (k) of Article XXVII of the

---

[3] As a minor point of clarification, the Court notes that Debtors dispute the enforceability of the secured status of the Disputed Amount against all parties, not just first mortgage holders.

6

Declaration provide that (i) the HOA has a lien to secure unpaid assessments, (ii) the lien is effective from the date of filing a claim of lien in the public records, and (iii) all parties acquiring an interest in the property are on notice of the potential existence of this lien.[4]

With that provision in mind, the question before the Court becomes a matter of precedence. Does the 1987 Declaration, which was publicly recorded, govern security of the Claim? Or does the current version of § 718.116(5)(a) of Florida Statutes govern? For this answer, the Court took extra care to review the entire Declaration because that document represents a binding agreement between the HOA and all unit owners, including Debtors. *Genesis RE Holdings, LLC v. Woodside Estates Homeowners Ass'n, Inc.*, Case No. CACE14-000430(AP), 2015 WL 5511558, *2-3 (17th Jud. Cir, Broward Cnty. App. May 8, 2015).

### 3. Impact of *Kaufman* Upon Interpretation of the Declaration

Article I of the Declaration adopts Chapter 718 of the Florida Statutes in the form in which that chapter existed at the date of the drafting and recordation of the Declaration, which was in 1987. It does not specifically state that later amendments to Chapter 718 (if any)

---

[4] Relevant excerpts from the Declaration are quoted in the analysis that follows this section.

7

should be adopted by reference. This omission led the Court down a very long road of research and analysis summarized neatly by the holding in *Kaufman v. Shere*, 347 So.2d 627 (Fla. 3d DCA 1977), which in turn was based upon the seminal Florida Supreme Court case of *Fleeman v. Case*, 342 So.2d 815 (Fla. 1977).

In *Kaufman*, the parties contested the applicability of the then-current Condominium Statutes to their dispute. *Id.* at 628. The *Kaufman* Court looked at the relevant declaration of condominium, carefully parsing the language of that document. *Id.* The declaration in *Kaufman* stated that it incorporated by reference provisions of the Condominium Statutes as they might be amended "from time to time." *Id.* (internal quotation marks omitted). The *Kaufman* court found the inclusion of this precise language, that is, the Condominium Statutes as they might be amended "from time to time," to be dispositive, and concluded that the then-current version of the Condominium Statutes applied. *Id.*

The keywords "as […] amended from time to time" have since become the metric in Florida for determining which version of the Condominium Statutes applies to a disputed matter involving a declaration of condominium. If the declaration incorporates the

Condominium Statutes as amended "from time to time", then the most current version of the Condominium Statutes applies. In the absence of this language, the situation becomes more opaque. And that is the exact predicament that the parties presented the Court.

B. Analysis of the Plain Language of the Declaration

To determine which version of the Florida Statutes to apply, the Court reviewed the entire the Declaration. Article I of the Declaration provides as follows:

> *The provisions of the Florida Condominium Act, Chapter 718, including all definitions therein contained, **as amended, as of the date of filing this Declaration,** are adopted herein by express reference and shall govern this CONDOMINIUM and the rights, duties and responsibilities of the CONDOMINIUM UNIT OWNERS thereof, except where permissive variances therefrom appear in this Declaration and the BYLAWS and ARTICLES OF INCORPORATION OF HIGHLAND HOUSE CONDOMINIUM ASSOCIATION, INC. (emphasis added).*

Article I does not contain the *Kaufman* clause adopting the Condominium Statutes as they might be amended "from time to time". This is a strong indication that the current version of Florida Statutes does not apply, but the Court delved deeper.

The Court next inspected the remainder of the Declaration, the Articles of Incorporation, and the Bylaws to determine two things: first,

9

whether another portion of the Declaration permitted retroactive application of the current form of the Condominium Statutes, and second, whether the Articles of Incorporation, the Bylaws, or any amendment to either of those documents permitted retroactive application. This analysis required close reading of the Declaration, Articles of Incorporation, and Bylaws.

Subsection (i) of Article XXVII grants the HOA a lien for unpaid assessments. The language is unequivocal. Subsection (j) places all parties on notice as to the existence of the lien. Subsection (k) states that "[t]he lien shall be effective from the date of filing of a claim of lien in the Public Records of Palm Beach County, Florida …". Subsection (k) does not provide for automatic perfection via statutory imposition of a lien, as is permitted under the current version of § 718.116 of the Condominium Statutes. Instead, subsection (k) provides that the lien must be recorded in order to be "effective".[5]

---

[5] The Declaration language (with irrelevant portions excerpted) is as follows:

    (i) Recognizing that the necessity for providing proper operation and management at the [condominium] entails the continuing payment of costs and expenses therefor … ASSOCIATION is hereby granted a lien upon such PRIVATE DWELLING … which lien shall secure and does secure the moneys due for all assessments ….

    (j) All persons … [are] placed on notice of the lien rights granted to ASSOCIATION ….

Because Article XXVII is inconsistent with the current version of § 718.116 of the Condominium Statutes, the Court took care to review any other provisions of the Declaration that might incorporate the present version of the Condominium Statutes or permit amendments that would lead to such incorporation.

Article XXX governs amendments to the Declaration. The Declaration requires that amendments occur via a majority vote and be recorded in the Public Records.[6] The parties did not provide the Court with a publicly recorded copy of an amended version of the Declaration. As a result, the Court concludes that the original Declaration remains the operative document.

The Court also reviewed the Articles of Incorporation and Bylaws for potential amendments. As with the Declaration, the copies of those documents provided to the Court did not reflect any amendment or revisions that impacted Article XXVII of the Declaration.[7]

---

    (k) The lien herein shall be effective from the date of filing of a claim of lien in the Public Records of Palm Beach County, Florida …..

Debtors Exhibit 4 (ECF No. 87-4), pdf pp. 15-16.

[6] *Id.* at pdf pp. 18-19.

[7] *Id.* at pdf pp. 26-41.

C. Comparison of Historical Statutes with Present Day Version

Interpretation of the Declaration led the Court to another important query: what did the Condominium Statutes provide at the date of recordation of the Declaration? Did they require an HOA lien to be recorded in order to be effective? To answer this question, the Court consulted the version of § 718.116 in effect as of February 9, 1987.

Section 718.116 (1987) provided that any lien, including an HOA lien, had to be recorded to be effective. Specifically, § 718.116(4)(a) (1987) stated as follows:

> *The association has a lien on each condominium parcel for any unpaid assessments with interest and for reasonable attorney's fees incurred by the association which are incident to the collection of the assessment or enforcement of the lien.* ***The lien is effective from and after the recording of a claim of lien in the public records in the county in which the condominium parcel is located*** *which states the description of the condominium parcel, the name of the record owner, the amount due, and the due dates. (*emphasis added)

This language shows that, on the date of recordation of the Declaration, the Condominium Statutes contemplated recordation of a typical HOA lien for assessments.

Although this question is a thorny one in many ways, the Court concludes that the intent of the Declaration drafters was creation of a set

12

of documents consistent with the then-existing Florida Statutes. This intent is the only logical harmonization of Articles I and XXVII of the Declaration and the 1987 version of the Condominium Statutes. The language of Article XXVII and the 1987 version of Florida Statute § 718.116 is virtually identical. Recordation of a claim of lien in favor of an HOA appears to have been mandated at the time to be "effective" or, in bankruptcy parlance, enforceable as a secured claim against a condominium parcel.

Several legal theories support the Court's conclusion that the HOA's lien still must be recorded to be effective against Debtors despite intervening amendment(s) to the Condominium Statutes. The Court will outline them below.

### D. The Declaration Is a Binding Agreement

A condominium declaration is a binding agreement between the association and unit owners. *Genesis RE Holdings*, 2015 WL 5511558, at *2-3. Parties on both sides have a right to rely upon the plain language of the agreement, as do third parties who might be impacted by any alteration in material terms. *Id.* at *3. Because the right to contract stems from the Florida Constitution, overcoming contractual provisions

13

in a condominium declaration requires one of three things: (1) an amendment consistent with the terms of the governing document, (2) language in a statutory subsection (or its legislative history) clearly indicating that the legislature intended retroactive application of that subsection, or (3) strong policy concerns regarding the public welfare that override the sanctity of individual rights to contract. *See Genesis RE Holdings*, 2015 WL 5511558, at *2-4 (declining to impair contractual rights described in declaration); *Fleeman*, 342 So.2d at 817-18 ("Statutes are presumed to be prospective in application unless the Legislature manifests an intention to the contrary."); *Pomponio v. Claridge of Pompano Condominium, Inc.*, 378 So.2d 774,779-781 (Fla. 1980) (discussing sanctity of freedom to contract balanced against societal welfare). The HOA has not presented the Court with support for any of these alternatives.

### 1. No Amendments to Declaration

The Court observes that the HOA never amended the Declaration to opt into later revisions to Chapter 718. The HOA had approximately twenty years to signal its desire to adopt legislative modifications to the Condominium Statutes imposing a statutory lien for unpaid

14

assessments. Absent express modification to the Declaration, the Court must construe that document as being governed by the laws existing as of its recordation date. This conclusion is consistent with Florida case law requiring strict interpretation of existing condominium documents and the general constitutional prohibition against any impairment to the freedom of parties to contract for a legal bargain. *Tranquil Harbour*, 79 So.3d at 86 ("Because a condominium is strictly a creature of statute, the language of the statutes in effect on the date of the declaration of condominium 'is as controlling as if engrafted onto' a contract governing its purchase and sale."); *Pundit 2 Joint Venture, LLP v. Westwood Gardens Homeowners Ass'n, Inc.* 169 So.3d 145, 147-48 (Fla. 4th DCA 2015); *Cohn v. Grand Condominium Ass'n, Inc.*, 62 So.3d 1120, 1121-22 (Fla. 2011); FLA. CONST., Art. I, § 10.

This interpretation likewise acknowledges that the Declaration is a covenant running with the land that applies to subsequent owners of a condominium parcel. *Montoya v. Alliance Cas., LLC (In re Montoya),* Adv. Proc. No. 6:17-ap-00115-CCJ, 2019 WL 10734239, *4 (Bankr. M.D. Fla. 2019); *Genesis RE Holdings*, 2015 WL 5511558, at *2; *Ero Props., Inc. v. Cone,* 418 So.2d 434, 435 (Fla. 3d DCA 1982).

### 2. Absence of Statutory Language

The language of the Declaration is not sufficiently ambiguous for the Court to overlook the most logical likely intent of the drafters and the identical language of the Condominium Statutes at that time. The Court could, however, potentially apply the current (2022) version of § 718.116(5)(a) if the language of the present-day statute or its legislative history clearly provide for retroactive application. *Beacon Hill Homeowners Ass'n v. Colfin Ah-Florida 7, LLC*, 221 So.3d 710, 713 (Fla. 3d DCA 2017) (citing *U.S. v. Forest Hill Gardens E. Condo Ass'n*, 990 F. Supp. 2d 1344, 1349 (S.D. Fla. 2014)).

Unfortunately for the HOA, the statute does not contain any such language, nor did the HOA provide the Court with any legislative history explicitly demonstrating the necessity of retroactive application.[8] This Court declines to infer legislative intent where it does not exist. *Fleeman*, 342 So.2d at 817-18.

### 3. Absence of Policy Arguments

The final possibility for an alternative interpretation requires

---

[8] Although this task was beyond the scope of the arguments presented by the HOA, the Court undertook its own legislative history research. This research did not uncover any written statement demonstrating legislative intent for retroactive application of § 718.166(5)(a) (2022).

16

overcoming a very large hurdle. The Florida Supreme Court has acknowledged that, in rare instances, public welfare concerns may outweigh constitutional protections for contractual obligations. *Pomponio*, 378 So.2d at 779-780; FLA. CONST., Art. I, § 10. This option, however, is a high mountain to climb, and the HOA has not provided the Court with any steps supporting the journey. Although the Court could formulate vague hypothetical theories based upon common knowledge regarding the maintenance of condominium associations generally, it would be inappropriate for the Court to invent policy arguments in favor of the HOA where none were presented.[9]

E. <u>Burden of Proof</u>

Having viewed the entire situation as academically as possible, the Court is left with one final consideration: which party bore the burden of proof regarding the Claim and the Objection?

Initially, the Claim was entitled to prima facia validity. *In re Dorway*, No. 07-21140-AJC, 2008 WL 5111882, at *2 (Bankr. S.D. Fla. July 14, 2008). After Debtors objected, however, the burden of proof

---

[9] The Court acknowledges that the HOA presented arguments pertinent to the precise situation involving the units at the condominium complex. These arguments, however, did not encompass the welfare of all condominium owners or all HOAs.

17

shifted to the HOA to overcome Debtors' objection. *Id*. The evidence presented failed to do so. As noted above, the HOA did not supply the Court with an amended form of Declaration that was publicly recorded prior to the filing of this bankruptcy case. The HOA also failed to provide the Court with any legal authority supporting retroactive application of § 718.116(5)(a) (2022) or any overarching policy concerns impacting the public welfare. The HOA has thus failed to overcome its burden of proof regarding the secured status of the portion of the Claim equal to the Disputed Amount.

## CONCLUSION

After reviewing the entire Declaration, the full record of all documents filed in support of and in opposition to the secured status of the Disputed Amount portion of the Claim, applicable Florida Statutes, legislative history, and extensive case law regarding all possible avenues of interpretation, the Court determines that the Objection has merit.

Chapter 718 (1987) and the Declaration required the HOA to record a Claim of Lien in order for its asserted lien to become effective. Absent recordation, the HOA is left with what the Court can only describe as an "unperfected" claim with respect to the Disputed Amount.

Because the lien was not perfected with respect to the Disputed Amount, operation of Bankruptcy Code § 544 renders the Disputed Amount ($36,558.30) unsecured.[10] The Court determines, and the Debtors have already conceded, that the balance of the Claim in the amount of $76,649.76 should be allowed as a secured claim against the Debtors' real property.

Accordingly, the Court ORDERS that:

1. The Objection is SUSTAINED in part and OVERRULED in part.
2. The HOA holds an allowed secured claim in the amount of $76,649.76 and an allowed unsecured claim in the amount of $36,558.30.

###

Copy furnished to:

Mary Jo Rivero, Esq., Attorney for Debtors

*Attorney for Debtors is directed to serve this Memorandum Opinion and Order upon all interested parties in compliance with all applicable rules.*

---

[10] As noted in the procedural background of this Opinion, the parties agree that the balance of the Claim is secured pursuant to entry of a final state court order.