

**ORDERED in the Southern District of Florida on November 3, 2022.**

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                                     Case No.: 22-10140-MAM

Luis Robert Adam and Gislaine Adam,

                                                       Chapter 13

    Debtors.

_____/

### MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION (ECF NO. 140)

Reconsideration offers an unsuccessful party the opportunity to identify errors and submit previously unavailable evidence. What it does not do is allow parties to relitigate issues or supplement the record with documents that could have timely submitted but were not. We now find ourselves in the latter category in this bankruptcy case.

PRIOR OPINION

A. Opinion and Reconsideration Motion

Creditor Highland House of Palm Beach Condominium Association, Inc. (the "HOA") seeks reconsideration (ECF No. 140) (the "Reconsideration Motion") of an opinion (ECF No. 125) (the "Opinion") determining that the HOA's claim is only partially secured. The Reconsideration Motion cites to Bankruptcy Rule 9023 but merely states that the Opinion "disregards salient details."[1]

B. Procedural History

Debtors' *Amended Objection to Claim on Shortened Notice* filed as ECF No. 67 (the "Objection") sought disallowance of $36,558.30 of a claim (Claim No. 18, the "Claim") filed by the HOA. After a review of the record, the Court set an evidentiary hearing on May 25, 2022 (the "Evidentiary Hearing"). The parties submitted additional testimonial and documentary evidence in support of their positions, as well as supplemental post-hearing briefs at ECF Nos. 96 and 97.

At the Evidentiary Hearing, the parties narrowed the scope of their dispute to Part C of the HOA's Statement of Itemized Interest, Fees, Expenses, and Charges (ECF No. 86-1, p. 5-6.). Part C describes $31,000 in past due monthly maintenance and special assessments plus accrued interest of $5,558.30 for a total of $36,558.30 (the "Disputed Amount"). Debtors contested the validity of the Disputed Amount

---

[1] Reconsideration Motion, p. 1.

2

despite entry of a state court judgment (the "Final Judgment")[2] because that judgment did not specifically include the Disputed Amount.[3]

At the Evidentiary Hearing and in their post-hearing briefing, the parties focused upon whether the Disputed Amount was secured as a result of entry of the Final Judgment and a related state court order regarding computation of attorneys' fees (the "Fee Order"). Although Debtors did not directly concede the correctness of the HOA's calculations, they did not dispute the HOA's entitlement to assess the Claim. Debtors acknowledged the finality of the Final Judgment and the Fee Order. As a result, the only question presented to the Court for resolution was whether the Disputed Amount constitutes a secured claim against Debtors' real property.

C. Summary of Prior Analysis

The Court analyzed Chapter 718 of the Florida Statutes (the "Condominium Statutes") and the governing declaration of condominium (ECF No. 87-4) (the "Declaration"). After a robust review of the Declaration and the history of Florida Statute § 718.116(5)(a),[4] the Court concluded that its interpretation of the Declaration required reference to Chapter 718 in its historical form as of February 9, 1987.

---

[2] See Exhibit B of the 104-page pdf docketed as ECF No. 86. The Court admitted the Final Judgement into evidence at the Evidentiary Hearing.

[3] The state court *Order and Final Judgment Granting Plaintiff's Motion for Attorneys' Fees and Costs to be Incorporated into the Final Judgment*, docketed in this Bankruptcy Case at ECF Nos. 86-2 and 86-3, amended the judgment.

[4] All references in this Opinion to "§ 718.[#]" are to Chapter 718, Florida Statutes. The Court also occasionally refers to Chapter 718 as the "Condominium Statutes".

Section 718.116 (1987) provided that any lien, including an HOA lien, had to be recorded to be effective. Specifically, § 718.116(4)(a) (1987) stated as follows:

> *The association has a lien on each condominium parcel for any unpaid assessments with interest and for reasonable attorney's fees incurred by the association which are incident to the collection of the assessment or enforcement of the lien.* ***The lien is effective from and after the recording of a claim of lien in the public records in the county in which the condominium parcel is located*** *which states the description of the condominium parcel, the name of the record owner, the amount due, and the due dates. (*emphasis added)

The Declaration contained language mirroring the provisions of § 718.116(4)(a) (1987), which prompted the Court to conclude that the Declaration drafters intended to create a set of documents consistent with the Condominium Statutes in existence as of the date of recordation of the Declaration (February 1987).

During its analysis, the Court noted that the HOA bore the burden of proof to substantiate its Claim. In the absence of a recorded copy of a claim of lien referring to the Disputed Amount and satisfying the requirements of both the Declaration and § 718.116(4)(a) (1987), the Court held that the HOA failed to meet its burden of proof.

## CURRENT ANALYSIS

So now we arrive at the key question: Does submission of a pre-existing, publicly recorded claim of lien after a full evidentiary hearing on the merits provide a basis for reconsideration? The answer is no.

A. <u>Belated Submission of Claim of Lien</u>

The HOA did not supply the Court with a copy of a recorded claim of lien as an exhibit during the Evidentiary Hearing, nor did it provide a recorded claim of lien as part of its post-hearing briefing. Instead, the HOA only attached a copy of a Claim of

4

Lien dated July 26, 2019 as Exhibit A to the Reconsideration Motion (the "Claim of Lien").[5] The Reconsideration Motion points out that one sentence of paragraph 8 ("Paragraph 8") of the Final Judgment[6] referenced the recordation of the Claim of Lien. The HOA did not direct the Court to Paragraph 8 as part of its post-hearing briefing, nor did it do so at the Evidentiary Hearing.

B. Standard for Reconsideration

The Reconsideration Motion relies upon Rule 9023, rather than Rule 9024, as its asserted basis for reconsideration. Because a bankruptcy case is an amalgamation of many smaller controversies, there has been some confusion over whether Bankruptcy Rule 9023 or Bankruptcy Rule 9024 applies in the context of a final court order issued in a main bankruptcy case. Courts often apply Bankruptcy Rule 9023 (and thus Rule 59)[7] where an order results in a final determination of a contested matter and the affected party files a motion for reconsideration within the time permitted for filing an appeal. *See United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006).

The text of Bankruptcy Rule 9023 is brief. It states that Rule 59 applies in cases under the Code, and that a motion for a new trial or to alter or amend a

---

[5] The Claim of Lien bears a stamp showing that it was publicly recorded in Palm Beach Cunty on July 30, 2019 in Official Record Book 30785 at Page 1486.

[6] ECF No. 86, p. 15 of 104. The Final Judgment is a 17-page document with 56 separately itemized paragraphs. Paragraph 8 is one of those paragraphs.

[7] References to "Rule" in this Opinion are to the Federal Rules of Civil Procedure.

judgment must be filed (and a court may on its own order a new trial) no later than 14 days after entry of judgment.

Rule 59 provides in turn that a court may grant a new trial after a nonjury trial for "any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. 59(a). Rule 59 allows the Court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." *Id*.

Circumstances warranting reconsideration under Rule 9023 or Rule 59 are extremely limited and are confined to newly discovered evidence or manifest errors of law or fact. *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir. 1999). If evidence was available but not presented at the time of trial, belated submission typically will not alter the existing judgment. *Id.* at 1120; *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

C. Submission of the Claim of Lien

Through submission of the Reconsideration Motion, the HOA attempted to supplement the record of this Bankruptcy Case by noting that Paragraph 8 of the Final Judgment described the Claim of Lien and its recordation. Paragraph 8 does indeed describe that a claim of lien was recorded in July 2019 but provides no details about the *content* of that claim of lien. Paragraph 8 does not describe the amount

purportedly secured by the Claim of Lien, nor does it quote any language within the Claim of Lien that would secure as-yet undeclared and unaccrued assessments and fees.

These omissions are significant because Debtors disputed the secured status of the Disputed Amount precisely because the Disputed Amount was not separately itemized in the Final Judgment. If the HOA's contention is that the text of the Claim of Lien provided a basis for the Disputed Amount to be secured, despite the absence of express language indicating this result in the Final Judgment, then the HOA needed to supply Debtors and the Court with a copy of the Claim of Lien at the Evidentiary Hearing. This did not occur, and an oblique reference regarding an unproduced claim of lien was insufficient.

During the Evidentiary Hearing, the parties stipulated to the validity of the Final Judgment, confining their arguments to whether entry of the Final Judgment sufficed to secure the Disputed Amount. Although testimony regarding the Final Judgment briefly encompassed discussion of a claim of lien, the HOA elected not to submit a copy of that document to the Court as an exhibit during the Evidentiary Hearing or during post-hearing briefing. Counsel's questions and the witness's answers regarding the Claim of Lien focused primarily upon a prospective amendment of the complaint in the state court litigation.[8]

---

[8] Beyond general discussion, the parties did not direct the Court's attention to any specific portion of the Final Judgment. Neither the HOA nor Debtor referred to Paragraph 8 (or, for that matter, Paragraph 19) at the Evidentiary Hearing or in their post-hearing briefing.

7

D. <u>Incorporation by Reference</u>

Because the Court admitted the Final Judgment into evidence, and Paragraph 8 of the Final Judgment refers to the Claim of Lien, the HOA apparently seeks to incorporate the Claim of Lien into the record by reference. Although the Court can appreciate the logical connection, allowing belated supplementation of the record through such a roundabout means would run counter to rule-based (and court-ordered) trial exhibit requirements, as well as contradict binding precedent interpreting Rule 59. *Mays,* 122 F.3d at 46.

Although the HOA strenuously and repeatedly argued that the Disputed Amount was secured, it placed its arguments upon two sources: the Declaration and Florida Statutes.[9] The HOA did not expressly rely upon Paragraph 8 in motion practice, oral argument, or post-hearing briefing. The HOA did not argue at the Evidentiary Hearing or in post-hearing briefing that incorporation of the Claim of Lien by reference in the Final Judgment provided a basis for security of the Disputed Amount. The HOA did not cite to Paragraph 8 in any filing or provide a copy of the Claim of Lien to the Court prior to its attachment to the Reconsideration Motion. The HOA did not ask the Court to take judicial notice of the recordation of the Claim of Lien.

The Claim of Lien was available but not presented at the time of the

---

[9] The HOA initially contended that the Disputed Amount was secured because it was held by an HOA, and that under the current version of the Condominium Statutes, HOA claims are (typically) secured. In post-trial briefing, the HOA later clarified that it based the assertion of security upon Florida Statutes and the Declaration.

8

Evidentiary Hearing. Belated submission with the Reconsideration Motion does not provide an adequate basis for alteration of the Opinion. *Mays.*, 122 F.3d at 46.

E. Additional Considerations

Even if the Court were to augment the evidentiary record with the belated submission of the Claim of Lien (which it does not), it is improbable that the language of the Claim of Lien purporting to secure unpaid assessments and fees would be sufficient to secure the Disputed Amount in any event.

The reason that the Claim of Lien could not have secured the Disputed Amount arises from the specific language of the Claim of Lien itself. By the express terms of the Claim of Lien, it secured a specific special assessment made by the HOA in 2019, as well as special assessments that were unpaid but due as of the date of recordation, which was July 30, 2019. Specifically, after describing a claim for special assessments in the amount of $10,000 due as of June 15, 2019 and a $1,000 balance of monthly assessments due July 15, 2019, the Claim of Lien provides, in relevant part:

> This Claim of Lien shall also secure all unpaid assessments; late fees, if any; interest; costs of collection; and attorneys' fees which are due and which may accrue subsequent to the above due dates and prior to entry of a final judgment of foreclosure.

ECF No. 140, pdf p. 7.

This language might, at first blush, appear to be broad enough to encompass the 2020 and 2021 special assessments declared by the HOA (the "Subsequent Assessments"). The record does not show, however, that the HOA declared the Subsequent Assessments due as of July 30, 2019 (the recordation date of the Claim of Lien). As a result, the Subsequent Assessments could not have been "due" and

9

"accrue", which was a stated requirement for an assessment to be covered by the Claim of Lien.

In *George v. Beach Club Villas Condo. Ass'n*, 833 So.2d 816, 820 (Fla. 3d DCA 2002), the appellate court likened separate special assessments made after the date of a claim of lien to be separate claims that require a separate claim of lien to be filed in the real estate records, because they were akin to a separate contract which requires a separate claim of lien. *Id.* at 820.

The Claim of Lien thus did not include the 2020 and 2021 special assessments (the "Subsequent Assessments") in its computation of the amount(s) due because they had yet to be declared by the HOA or to become due and owing in 2019.

Now, if the HOA had chosen to amend the state court foreclosure complaint (the "Complaint") to include the Subsequent Assessments in the amount due by Debtors or had filed a new Claim of Lien to cover each of the Subsequent Assessments, the analysis at this point might be different. But none of those things happened.

At the Evidentiary Hearing, the HOA's representative testified that although the HOA considered amending the Complaint, it chose not to do so, to ensure that the HOA's state court lien foreclosure action (the "Foreclosure Action") remained on the state court trial calendar. Regardless of the rationale for the decision, no amendment occurred.

The lack of amendment meant that the Foreclosure Action proceeded based upon the amount(s) specified in the Complaint, plus any interest and attorneys' fees

accrued in relation to that amount. That amount did not include the Subsequent Assessments or the interest due on them. The Final Judgment merely provided the HOA with a judgment for $46,998.57 based upon unpaid monthly assessments and a special assessment then due, plus pre-judgment interest together with post judgment interest.[10] The Fee Order supplements the Final Judgment amount with an additional $27,750.00 for attorneys' fees and $1,282.80 for costs (for a total of $29,032), plus interest.[11]

Neither the Final Judgment nor the Fee Order includes the Subsequent Assessments in the calculations of amounts due. Thus, although the dates of entry for the Final Judgment (September 16, 2021) and the Fee Order (January 7, 2022) post-date the imposition of the Subsequent Assessments, those assessments are not secured by recordation of the Final Judgment.

The passage of time alone would not suffice to bring the Subsequent Assessments under the "umbrella" of the foreclosure action, nor would the broad language of the Claim of Lien. *Id.*, *Miller v. Evergreen Lakes Homeowners Ass'n*, 19 So.3d 1089, 1090 (Fla. 4th DCA 2009) (citing same); *Losner v. Australian of Palm Beach Condo Ass'n, Inc.*, 139 So.3d 987 (Fla. 4th DCA 2014) (citing George). Something more was needed.

The HOA had two options for ensuring that the Subsequent Assessments were

---

[10] ECF No. 86, pdf pp. 25 (paragraph A). This judgment amount is based upon $27,350 of unpaid regular assessments due through September 2021, $10,000 for an unpaid special assessment due June 15, 2019, and $9,648.57 in pre-judgment interest.

[11] ECF No. 86, pdf pp. 42-43 (paragraph D).

11

treated as secured claims. The HOA could have either (i) supplemented the amounts to be included in the Final Judgment by amending the Complaint, or (ii) filed a new claim of lien describing each of the Subsequent Assessments after the HOA declared them, including during the "gap period" between issuance of the Final Judgment and the filing of Debtors' bankruptcy case.[12] Neither occurred.

Even if the Court were to adopt the HOA's argument that somehow the Claim of Lien was broad enough to incorporate the Subsequent Assessments, entry of the Foreclosure Judgment without including the amount of the Subsequent Assessments negated that argument. This situation is analogous to foreclosure of a mortgage against real property. Long-settled case law provides that when a mortgagee forecloses upon a mortgage lien, the mortgage "merges" into the final judgment. *Aluia v. Dyck-O'Neal, Inc.*, 205 So.3d 768, 773-75 (2d DCA 2016). The obligation remains secured, but the document providing security is no longer the mortgage; it is the final judgment itself. *Id*. If an amount is not included in the final judgment, then that amount is not deemed automatically secured by entry and recordation of the final judgment because the judgment effectively replaces the underlying mortgage document. *Id*.

As is the case with the merger of a mortgage into a final judgment of foreclosure, in this instance, the Claim of Lien merged into the Final Judgment upon entry. The 2019 assessments described in the Claim of Lien were no longer secured

---

[12] The Declaration and § 718.116 (1987) required the HOA to file a (new) claim of lien for the Subsequent Assessments to constitute a secured lien against the unit.

by the Claim of Lien, but rather by the Final Judgment.

Here, neither the Claim of Lien nor the Final Judgment itemized or otherwise incorporated the Subsequent Assessments. Once the Foreclosure Action terminated in the entry of the Final Judgment (which did not include the Subsequent Assessments), the Subsequent Assessments remained unsecured because the HOA did not take any steps to secure the Subsequent Assessments.

Moreover, at this late date, over a year past entry of the Final Judgment, the HOA is judicially estopped from asserting that the Claim of Lien secures the Subsequent Assessments. The HOA did not specifically pursue the Subsequent Assessments in the foreclosure action via an amendment of the Complaint and proceeded to obtain the Foreclosure Judgment without including those assessments. The HOA also did not file separate claims of lien after each of the Subsequent Assessments became due or in the approximately three-month period between entry of the Final Judgment and the commencement of this bankruptcy case. Those failures indicate that no set of circumstances exist in which the Disputed Amount could be secured.

F. Conclusion

The Court concludes that the belated submission of the Claim of Lien as an exhibit to the Reconsideration Motion is too little, too late, and in any event, the existence of the Claim of Lien would not change the result determined by the Court in the Opinion. Having reviewed the full record, including the Reconsideration Motion and all exhibits, the Court ORDERS that the Reconsideration Motion is

13

DENIED.

### 

Copy furnished to:

David A. Ray, Esq., Attorney for Movant

*Movant's Attorney is directed to serve this Memorandum Opinion and Order upon all interested parties in compliance with all applicable rules.*